Argued December 22, 1913, decided January 13, 1914.

## JOHNSON v. MIAMI LUMBER CO.

(137 Pac. 765.)

**Attorney and Client—Action for Compensation—Instructions.**

1. In an action by an attorney for compensation, evidence that, after plaintiff had tendered defendant his resignation of an employment on a monthly retainer of $30 unless defendant should discharge an objectionable employee, defendant willfully kept from plaintiff knowledge that the objectionable employee had been retained, and plaintiff's resignation accepted, till plaintiff had rendered services in important litigation then pending, and had accepted the usual monthly retainer, justified an instruction as to fraudulent conduct of the de-

fendant in failing to notify plaintiff of the acceptance of his resignation.

[As to right of attorney to recover compensation for his services, see note in 127 Am. St. Rep. 841. As to validity of agreements between attorney and client for compensation, see note in 1 Ann. Cas. 299.]

**Appeal and Error—Presentation of Questions in Trial Court—Necessity for Exceptions.**

2. A ruling excluding evidence cannot be considered on appeal, when not excepted to.

From Tillamook: PERCY R. KELLY, Judge.

Department 2. Statement by MR. CHIEF JUSTICE McBRIDE.

This is an action by S. S. Johnson against the Miami Lumber Company, a corporation, to recover for the reasonable value of legal services rendered defendant. The complaint, in substance, alleges that between October 5 and December 25, 1911, plaintiff, at the instance and request of defendant, rendered certain legal services for defendant in the trial of a certain case in the United States District Court; that the reasonable value of such services and of plaintiff's expenses in connection therewith was the sum of $500; that defendant has paid plaintiff's expenses and the further sum of $45, leaving due the sum of $455.

Defendant answered, admitting that plaintiff rendered the services alleged, but denying the value thereof, and set up as an affirmative defense that at all the times from April 1, 1909, to January 1, 1912, plaintiff and C. W. Talmage were the retained attorneys of defendant under and by virtue of a contract with them, whereby they agreed to attend to all defendant's business in the courts of the State of Oregon for the sum of $30 per month, and their necessary expenses, and that the litigation for which plaintiffs seeks to recover in this action was litigation arising and conducted under the terms and conditions

of said contract, alleging payment under the terms of that agreement.

The plaintiff's reply admitted the making of the agreement, but alleged that on the 23d day of November, 1911, there was a disagreement between plaintiff and certain agents of defendant in Tillamook County; that on said date plaintiff wrote defendant that unless one of its agents was discharged from its employ defendant must accept the resignation of plaintiff, to take effect on the 30th day of September, 1911; that said letter was received by defendant prior to the date last mentioned; that upon receipt of said letter of resignation, the defendant, unknown to plaintiff, did not discharge said employee, and failed to inform plaintiff whether or not his resignation was accepted, but did immediately notify its agent in Tillamook and C. W. Talmage, its attorney, that plaintiff had resigned and was no longer in its employ; that the said agents of defendant did not notify plaintiff that his resignation was accepted; but that defendant and its attorney Talmage, in order to obtain the legal services of plaintiff at only trifling costs in a very important law action, fraudulently represented and led plaintiff to believe by acts and words that he was still retained as attorney, and did not notify him that his resignation had been accepted until after his services in the law action had been rendered, thereafter informing him that his resignation had been accepted as of September 30, 1911.                    AFFIRMED.

For appellant there was a brief over the names of *Mr. Rollin K. Page, Mr. Harold D. Roberts* and *Mr. C. W. Talmage,* with oral arguments by *Mr. Page* and *Mr. Roberts.*

For respondent there was a brief over the names of *Mr. Ralph R. Duniway, Mr. T. B. Handley* and *Mr.*

*Webster Holmes,* with an oral argument by *Mr. Duniway.*

Opinion by MR. CHIEF JUSTICE McBRIDE.

The pleadings are voluminous, and the foregoing is only a summary, but it is deemed sufficient to present the issue tried in the court below. It appears from plaintiff's testimony that plaintiff and C. W. Talmage were partners in the practice of law when the agreement with defendant for the rendition of legal services was entered into, and that while this agreement was in force a case entitled "*Wheeler* v. *Miami Lumber Company*" was instituted against defendant. The firm of Johnson & Talmage had been dissolved, but it was agreed between them that they would jointly conduct the business of the defendant, and share in the retainer of $30 a month. On September 23, 1911, the plaintiff wrote the defendant the following letter:

"Miami Lumber Company.

"I have written you heretofore concerning the man in your employ by name of Hiram Eadus. * * You have paid no attention to this, at least you have not answered my letter. * * Mr. Talmage and I have dissolved partnership a few months ago, but have been carrying on your business together. * * As you have ignored the recommendation heretofore made by me with respect to this man Eadus I wish to say that on and after the 30th day of September, which ends a quarter of our employment as your attorney, that unless you immediately discharge Eadus you may consider myself no longer as your attorney. * * This man Eadus is a disreputable trouble-maker. * * Now kindly understand that if you do not immediately discharge from your employ Hiram Eadus you may consider my resignation as your attorney, tendered to take effect on the 30th day of September.

"S. S. JOHNSON."

Defendant replied thereto as follows:

"October 5, 1911.
"Mr. Sidney S. Johnson.

"Replying to your letter of September 23d, regarding Mr. Eadus, will say we have written Mr. Bent about the matter and will communicate with you further.
                    "MIAMI LUMBER COMPANY,
                              "By ISHAM."

Defendant sent the following letter to its agent in Tillamook:

"October 24, 1911.
"Mr. A. S. Bent.

"We have yours of October 18th with letter of explanation from Mr. Eadus. We accept the explanation and let the matter drop. Mr. Talmage is going to act as our attorney as Mr. Johnson has resigned.
                    "MIAMI LUMBER COMPANY,
                              "By ISHAM."

Bent did not notify plaintiff or Talmage of the receipt of this letter until after plaintiff had completed his services and won for defendant the case of *Wheeler* v. *Miami Lumber Company,* which was an important case involving a claim against it of several thousand dollars. After plaintiff had won this case and taken his share of the retainer from Talmage, supposing that his request had been complied with and the objectionable agent discharged, he was informed for the first time that his resignation had been accepted in October, and that he was no longer an attorney for the company. Without repeating it in detail, we think there was sufficient evidence tending to show that defendant's agent in Oregon had willfully kept from plaintiff the knowledge that the objectionable employee had not been discharged, and that his resignation had been accepted to justify the submission of the case to the jury. It is clear that if plaintiff had known

that his employment by defendant had been terminated and that he would no longer receive his share of the retainer theretofore paid to Talmage & Johnson, he would not have rendered the very valuable services given by him for the pittance paid him by Talmage. The defendant and its agent knew that he was rendering the services, and allowed him so to do after it had accepted his resignation; and its failure to notify Talmage or plaintiff that it had retained the objectionable employee, but had accepted Johnson's resignation, might well satisfy a jury that it was seeking to obtain the benefit of his previous knowledge of the case, and his ability to conduct it to a successful issue, without giving an equivalent.

1. It is also urged that the court erred in instructing the jury in relation to the fraudulent conduct of the defendant in failing to notify plaintiff of the acceptance of his resignation before he had rendered the services above alluded to; but, for the reasons above given, we think the instruction was justified by the evidence.

2. It is true that in the course of the trial the court ruled that there had been no evidence of fraud and bad faith on the part of the defendant, and excluded testimony offered to show that Talmage had no knowledge of the acceptance of plaintiff's resignation until after the trial of the case of *Wheeler* v. *Miami Lumber Company;* but this ruling was not excepted to, and cannot be considered here. In fact, there was no evidence that Talmage knew any more about the matter than did plaintiff. But there is evidence that defendant and its agent in Tillamook knew that Johnson was no longer under retainer by the company and was no longer a partner of Talmage, and, with this knowledge in its possession, continued to correspond with Johnson and to accept his services and their valuable results, without informing him that when they were

68 Or.—35

terminated he would no longer be in receipt of a retainer from it.

The verdict was just, and the judgment is affirmed.

AFFIRMED.

MR. JUSTICE BEAN, MR. JUSTICE EAKIN and MR. JUSTICE MCNARY concur.